**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JACQUELINE A., | : | CIVIL ACTION |
|       Plaintiff | : | |
|     v. | : | |
| | : | |
| FRANK BISIGNANO,[1] | : | |
| Commissioner of the Social Security | : | |
| Administration, | : | |
|       Defendant | : | NO.  24-4871 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                    June 30, 2026

Jacqueline A. ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act.  Plaintiff has filed a brief in support of her request for review, the Commissioner has responded to it, and Plaintiff has filed a reply.  For the reasons set forth below, Plaintiff's request for review is granted and the case remanded to the Commissioner.

## I.      PROCEDURAL HISTORY[2]

On March 1, 2022, Plaintiff applied for DIB and SSI, alleging that her disability commenced on February 29, 2020.  R. 14.   The claim was denied initially and upon reconsideration; therefore, Plaintiff requested a hearing.  *Id.*   On August 14, 2023, Plaintiff

---

[1] Frank Bisignano became Commissioner of the Social Security Administration on May 7, 2025.  Pursuant to Fed. R. Civ. P. 25(d), Mr. Bisignano is substituted as Defendant in this suit and, pursuant to the last sentence of 42 U.S.C. § 405(g), no further action needs to be taken to continue this suit.

[2] The court has reviewed and considered the following documents in analyzing this case:  Plaintiff's Brief and Statement of Issues in Support of her Request for Review ("Pl. Br."), the Brief of Defendant ("Resp."), Plaintiff's Reply to Brief of Defendant ("Reply"), and the administrative record.  ("R.").

appeared for a telephonic hearing, before Marc Silverman, Administrative Law Judge ("the ALJ");

Plaintiff, represented by an attorney, and vocational expert Linda Dezack, ("the VE"), testified at

the hearing. *Id.* On November 1, 2023, the ALJ, using the sequential evaluation process ("SEP")

for disability,[3] issued an unfavorable decision. R. 17-30. The Social Security Administration's

Appeals Council denied Plaintiff's request for review, on July 29, 2024, making the ALJ's decision

the Commissioner's final determination. R. 1-3. Plaintiff presently seeks judicial review, and the

parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).[4]

## II.    FACTUAL BACKGROUND

### A.    Personal History

Plaintiff, born on June 29, 1970, was 49 years old on her alleged disability onset date and

53 years old at the time of the administrative hearing. R. 28. Plaintiff lives with her uncle. R. 45.

---

[3] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1. If claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

> 2. If claimant is found not to have a severe impairment which significantly limits her physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

> 3. If claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

> 4. If claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

> 5. The Commissioner will determine whether, given claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

[4] The case was originally referred to the Honorable Elizabeth T. Hey. After Judge Hey retired from the bench, the case was referred to the undersigned.

B.      Plaintiff's Testimony

At the August 14, 2023, hearing, Plaintiff testified that she last worked as a licensed hairstylist, which required her to stand and walk for two hours a day, bend down frequently, and lift up to ten pounds.  R. 40-41.  After being diagnosed with sciatica, she found it difficult to get out of bed and to stand, lift, and turn throughout the day, causing her to stop working.  R. 42.  After her sciatica "lifted," Plaintiff returned to work as a hairstylist at a different salon, where her duties included climbing a stepladder to clean products on shelves, answering phones, and doing laundry.  R. 43.  She stopped working after three months. R. 43.

Plaintiff was also diagnosed with cirrhosis, gastritis, and fatty liver disease.  R. 39.  Because of her cirrhosis, Plaintiff was hospitalized and required a blood transfusion.  R. 39.  Plaintiff experienced kidney failure twice and was diagnosed with COVID twice.  R. 44.  Her cirrhosis causes Plaintiff to experience brain fog, memory loss and foot pain.  R. 44.  She takes Pantoprazole and Mannitol for her liver.  R. 45.  She has experienced black stool and internal bleeding from her liver issues.  R. 44.  Despite two colonoscopies, Plaintiff's doctor could not determine the source of the internal bleeding.  R. 46-47.  The initial dose, three scoops per day, was decreased to one and a half to two scoops per day, because the higher dosage caused dehydration.  R. 48.  When the lower dose does not work, Plaintiff uses the bathroom more than five but fewer than ten times per day.  R. 48.

Plaintiff regularly experiences back pain and extreme foot pain.  R. 39.  This causes difficulty standing, walking and maintaining balance.  R. 39.  Plaintiff fell several times in the months preceding the hearing.  R. 40, 49.  Once, when she fell, her leg went through drywall.  R. 49.  On another occasion, she tripped on flat pavement and injured her toe and face.  R. 49.

3

Plaintiff has diagnosed anxiety, depression, bipolar disorder and severe mood disorder. R. 50, 51. She has panic attacks every three days where she starts crying and experiences heart palpitations. R. 50, 52. Plaintiff went to the ER for a panic attack in 2020. R. 50. The day prior to the hearing, she had a panic attack because of a flat tire and she could not reach her mother to call AAA. R. 50. She does not feel good about herself, because she can't function well. R. 50. Plaintiff experiences highs and lows; her emotions fluctuate rapidly. R. 51. She cannot drive far, because she gets nervous and lost on the road despite using a GPS. R. 52. Plaintiff has one close girlfriend. R. 52. Her groceries are delivered, or she drives to the grocery store in an emergency. R. 52. Plaintiff describes herself as very friendly and pleasant with people. R. 53. She feels annoyed and angry when she calls a utility company and can't speak with a live person. R. 53.

Plaintiff only travels to medical appointments and to visit her mom, who lives less than one mile away. R. 52. She is prescribed Seroquel for insomnia and sees a psychiatrist once a week. R. 51.

C.    Vocational Testimony

The VE classified Plaintiff's past job as beautician, as light,[5] and unskilled.[6] The ALJ asked the VE to consider a person having Plaintiff's age, education and work experience who is limited to light work and who can: occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; occasionally stoop, crouch, kneel, and crawl; never get exposed to concentrated exposure to unprotected heights; perform simple tasks in a routine work environment; occasionally interact with supervisors, co-workers, and the general public, but would be able to

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[6] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a).

have frequent interaction during a 30-day training period; and perform low-stress work, which is defined as routine work with no more than occasional changes in the work.  R. 54-55.  The VE opined that, although this individual could not perform Plaintiff's past work, they could perform three light jobs:  (1) inspector and hand packager, 256,000 positions in the national economy; (2) hospital plastics assembler, 251,670 positions in the national economy; and (3) housekeeper, 1,000,000 positions in the national economy.  R. 55.  The VE further opined that an individual who was off task fifteen percent of the workday, required redirection, and needed to use the bathroom more frequently than during customary breaks would be unable to maintain employment. R. 56.

### III.    THE ALJ's FINDINGS

In his decision, the ALJ issued the following findings:

1.    [Plaintiff] meets the insured status requirements of the Social Security Act through June 30, 2024.

2.    [Plaintiff] has not engaged in substantial gainful activity since February 29, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.    [Plaintiff] has the following severe impairments: liver cirrhosis; fatty liver; alcohol use disorder; depression; attention deficit hyperactivity disorder (ADHD); and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4.    [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, I find that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(a), except: can climb ramps and stairs occasionally; can never climb ladders, ropes, and scaffolds; can stoop, crouch, kneel, and crawl occasionally; must avoid

concentrated exposure to unprotected heights; limited to simple tasks in a routine work environment; no more than occasional interaction with supervisors, co-workers, and the general public, but would be able to have frequent interaction during a 30-day training period; and limited to low-stress work, which is defined as routine work with no more than occasional changes in the work.

6.     [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.     [Plaintiff] was born on June 29, 1970 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.     [Plaintiff] has at least a high school education (20 CFR 404.1564 and 416.963).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not the [Plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.    [Plaintiff] has not been under a disability, as defined in the Social Security Act, from February 29, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

R. 16-17, 19, 26-28.

## IV.    DISCUSSION

A.    Standard of Review

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's

findings of fact will not be disturbed if they are supported by substantial evidence.  *Poulos v.*

6

*Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ, and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.      Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

7

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents her from returning to her past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given her age, education, work experience and residual functional capacity. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.    Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that, although Plaintiff could not perform her past relevant work, she could perform other work and, hence, was not disabled. R. 17-29. Plaintiff disputes the ALJ's decision, arguing that the ALJ's RFC determination that she could only tolerate occasional interaction with supervisors, coworkers and the general public ("interact with others") but would be able to tolerate frequent interaction with supervisors throughout a 30-day training period defies logic. Pl. Br. at 10-18. The government disputes Plaintiff's arguments. Resp. 3-12. This court agrees with Plaintiff.

RFC is the most an individual can do, despite limitations, on a regular and continuing basis, defined as eight hours per day, five days a week. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1. To permit meaningful judicial review, an ALJ must articulate a specific factual basis for each finding. *See Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) ("the ALJ's finding of residual functional capacity must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'"). Here, the ALJ's determination that Plaintiff could

8

tolerate a short-term period of frequent interaction with others during a training period is unsupported by any meaningful explanation.

The ALJ purported to accommodate Plaintiff's social limitations by restricting her to "no more than occasional interaction with supervisors, co-workers, and the general public," while also finding that she "would be able to have frequent interaction during a 30-day training period."  R. 24.  In reaching that conclusion, the ALJ rejected Dr. Gregory Kramer's opinion that Plaintiff had moderate limitations in interacting with coworkers and supervisors and mild limitations in interacting with the public. R. 24.  The ALJ likewise rejected Dr. Dan Jacob's opinion that Plaintiff had moderate limitations in interacting appropriately with the public and in getting along with coworkers or peers without distracting them or exhibiting behavioral extremes.  R. 25.  Instead, the ALJ credited Plaintiff's testimony that she had no difficulty getting along with strangers and had never been terminated or laid off due to interpersonal conflicts, as well as treatment notes reflecting that Plaintiff was cooperative with healthcare providers.  R. 25.  The vocational expert testified that the DOT does not address interaction with coworkers, supervisors, or the general public during a 30-day training period and that her testimony on this point was, instead, based upon her professional experience, training, and education.  R. 56.

The ALJ's decision fails to explain how the evidence supports the exception to the otherwise limiting social-interaction restriction.  Nothing in the decision or the record identifies the origin of the 30-day training-period limitation or explains what evidence demonstrates that Plaintiff would be capable of tolerating frequent interaction with others during the initial month of employment while otherwise being limited to only occasional interaction on a regular and continuing basis.  The logical bridge between the evidence and the RFC finding is, therefore, absent.  Accordingly, remand is warranted so that the ALJ may explain how Plaintiff could be both

9

generally limited to only occasional interaction with supervisors, and capable of frequent interaction with supervisors during the first 30 days of employment.[7]

An implementing order and order of judgment follow.

---

[7] On more than one occasion, the undersigned was faced with the same RFC determination by the same ALJ and noted that it was facially illogical, requiring remand. *See Gosia S. v. Bisignano*, No. CV 25-3392, 2026 WL 533745, at *4 (E.D. Pa. Feb. 25, 2026); *Yazmin Q. v. O'Malley*, Civ. A. No. 24-1531, 2024 WL 4567277, *6 (E.D. Pa. Oct. 24, 2024). Other Judges in the District have similarly remanded for an identical illogical mental RFC. *See Cook v. Kijakazi*, No. CV 21-4532, 2022 WL 1711654, at *2 (E.D. Pa. May 27, 2022) (remanding the ALJ's mental RFC because the ALJ failed to explain "how or why Plaintiff could only occasionally interact with colleagues and supervisors ordinarily, but frequently do so during a 30-day training period at the start of a job"); *see also Thomas v. Kijakazi*, No. CV 21-4497, 2023 WL 3767742, at *8 (E.D. Pa. June 1, 2023) (remanding because the record showed that it would be difficult for Plaintiff to maintain frequent interaction with others for a 30-day training period); *cf. Littlejohn v. Kijakazi*, No. CV 22-4678, 2023 WL 4564548, at *4 (E.D. Pa. July 17, 2023) (affirming the ALJ's mental RFC because the Plaintiff failed to cite evidence that a claimant could not complete a 30-day training period).

10